```
1              IN THE UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF ARKANSAS
2                         CENTRAL DIVISION

3   DAREL ADELSBERGER and
    ANNETTE ADELSBERGER
4
                 Plaintiffs
5
      Vs.                              No.  4:21-CV-471-JM
6                                      September 21, 2022
                                       Little Rock, Arkansas
7   UNION PACIFIC RAILROAD COMPANY     10:00 a.m.

8            Defendant

9


10       TRANSCRIPT OF MOTIONS IN LIMINE HEARING

11       BEFORE THE HONORABLE JAMES M. MOODY, JR.

12            UNITED STATES DISTRICT JUDGE

13


14  APPEARANCES:

15  On Behalf of the Plaintiffs:

16      LEE CURRY
        ROBERT EDWIN HODGE, II
17      AMANDA DAWN KENNEDY
        Lassiter & Cassinelli
18      300 South Spring Street, Suite 800
        Little Rock, Arkansas 72201
19
    On Behalf of the Defendants:
20
        SCOTT TUCKER
21      JAMIE MARIE HUFFMAN JONES  Friday Eldredge & Clark,
    LLP
22      400 West Capitol Avenue, Suite 2000
        Little Rock, Arkansas 72201
23

24      Proceedings reported by machine stenography and
    displayed in realtime; transcript prepared utilizing
25  computer-aided transcription.
```

Valarie D. Flora, FCRR, TX-CSR, AR-CCR
United States Court Reporter
Valarie_Flora@ared.uscourts.gov (501) 604-5105

**EXHIBIT 6**

1  buy cars at auction, they buy wreckers at auction, and
2  then they take car stackers and stack them up on the rear
3  of the property and just move it and keep an inventory.
4  They go, I know I've got Nissan Altimas back there and I
5  know I've got Ford Explorers over here.
6      They can't -- they cannot purchase significant
7  inventory to pull the parts out of the cars because they
8  rely on the amount of land that they've got in order to
9  store that inventory to be able to go out there and take
10 the transmission off a Nissan Altima.
11     So whereas back in, you know, the -- you know, for
12 purposes of just a discussion and not to -- not to reopen
13 a damages conversation, but as far back as 2013, they
14 noticed ground saturation in the back.  And at this point,
15 it's continued to creep to where they've, essentially, got
16 about one-third of their entire football field, so the 30
17 yard line to their shop, that they can store cars on;
18 whereas, a decade ago they could store it on the entire
19 field.  They can -- they can't stock the inventory to make
20 the sales to keep their profits up.
21         THE COURT:  But my question is, how do you
22 translate the reality on the ground to dollars?  Your
23 clients say that there's all kinds of reasons other than
24 this lack of area that would that would justify this
25 fluctuation in property.  I mean, you go from -- it goes

1  up and down.  If you had a steady decline as a result of
2  the encroachment, you might be able to show that I've got
3  a ten percent encroachment and I show a ten percent
4  reduction.  But your clients said they didn't know what
5  portion of their lost profits was a result of the reality
6  on the ground, and I haven't been presented with anything
7  other than it could be Trump, it could be car prices, it
8  could be the Walmart syndrome, it could be a lot of
9  things.  Not once did they say what you're telling me,
10 that as a result of our lack of space.
11     I mean, I need something to take it out of the world
12 of speculation and just -- well, it's just common sense
13 that, if you lose 30 percent of your property, you lose 30
14 percent of your profits.  That's not a leap that I can
15 make and the jury can't make because you could -- there's
16 not enough evidence for them to -- based on what I'm
17 looking at here, unless you can show me something else
18 that was provided prior to the discovery cutoff, that
19 explains the proximate cause between the flooding and the
20 dollar value, not just the proximate cause of the flooding
21 and the lack of territory that they had to market their --
22         MR. HODGE:  Your Honor, I -- I don't have --
23 candidly, I don't have anything that I can proffer right
24 now as to that.  I can make an argument that I think that
25 this is inappropriate for a motion in limine.  I think the

1  subject is -- I mean, this is, essentially, a motion for
2  summary judgment against us at this point because, if they
3  can't go in and put on calculations of lost profit, which
4  is the only -- which is the only measure of damages that
5  we've been able to wrangle since we took over the case,
6  I'm confused as to why it couldn't have been, you know,
7  settled on a pretrial motion or -- we're supposed to be
8  trying this case right now, and we didn't have any idea
9  that they had any issue with lost profits being our
10 measure of damages until motions in limine were filed.
11         THE COURT:  I mean I guess, Mr. Hodge, that
12 could have been, but it's the same thing asking now than
13 it would be at the end of your case in chief and I direct
14 a verdict on lost profits.  I mean, whether it came up
15 after your case in chief or whether or not it's coming up
16 now or whether or not it was a motion for partial summary
17 judgment on this element of damage, it's all a question
18 that needs to be resolved as to whether or not your proof
19 on that element of damages is going to chin the bar.  I
20 understand that they didn't file a motion for summary
21 judgment on it, but I don't think it's improper to bring
22 it up in a motion in limine.  It's unorthodox, but it's
23 going to be brought up either pretrial or mid trial or
24 post trial.
25         MR. HODGE:  Your Honor, I'll direct you to 293

```
1              (Proceedings adjourned at 11:48 p.m.)
2                           * * * * *
3                      REPORTER'S CERTIFICATE
4       I, Valarie D. Flora, FCRR, TX-CSR, AR-CCR, certify
5    that the foregoing is a correct transcript of proceedings
6    in the above-entitled matter.
7       Dated this the 30th day of September, 2022.
8    /s/ Valarie D. Flora, CCR
9    ------------------------
10   United States Court Reporter
```